Filed 9/3/21  P. v. Bustillos CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

|  |  |
|---|---|
| THE PEOPLE, | C090915 |
| Plaintiff and Respondent, | (Super. Ct. No. 18F886) |
| v. | |
| TINA LOUISE BUSTILLOS, | |
| Defendant and Appellant. | |

Defendant Tina Louise Bustillos appeals from the judgment entered following her no contest plea to possession of methamphetamine for sale (Health & Saf. Code, § 11378), and the trial court's subsequent grant of probation.  Defendant argues the trial court erred in denying her motion to suppress the methamphetamine discovered when parole agents picked up her purse to search it during a parole search of the bedroom defendant shared with her parolee husband.  We will affirm the judgment, but direct correction of the minute order/order of probation as described *post*.

1

## FACTUAL AND PROCEDURAL BACKGROUND

The complaint filed June 20, 2018, charged defendant with possession of methamphetamine for sale; she pleaded not guilty. She subsequently filed a motion to suppress evidence (Pen. Code, § 1538.5), arguing (as relevant here) that the search of her purse was illegal because it was outside the scope of the parole search. The People opposed the motion, arguing that the purse was located in an area of common control, defendant consented to the search of her purse, and the drugs were in plain view at the top of the open purse.

On June 13, 2019, the trial court held an evidentiary hearing on the suppression motion. Testimony at the hearing established that the parole agents conducted a search of parolee Marcel Denudt's home, including the bedroom he shared with defendant, who was his wife. When agents arrived at the house, Denudt was not home and defendant was napping in the bedroom. Agents asked her to leave the house for the search and to leave her purse in the bedroom. She left the purse and waited outside in the yard.

Agents Justin Benson and Matthew Mock searched the bedroom. As Benson looked under the bed, he saw a small safe/lockbox. Agent Steven Grace took the box outside and gave it to another agent to ask defendant about opening it. It undisputed that defendant ultimately told the agents the key to the lockbox was in her purse, which was located next to the bed. Defendant denied she consented to the agents' retrieving the key from that purse, but admitted giving the agents permission to break open the box.

Agent Grace testified defendant consented to the agents' retrieval of the key from the purse. Grace returned to the bedroom and located the purse. When he picked it up, he noted a white substance in a plastic bag at the top of the purse. When asked whether he had to manipulate the purse to see the suspected methamphetamine, Grace replied, "No. I mean . . . it was just a grab, lifting up to try and identify the contents inside the purse, and right there on top was the suspected methamphetamine." Also located in the shared bedroom during the search was a methamphetamine pipe.

Following argument, the trial court denied the motion.  The court found the purse was in a shared bedroom during a valid parole search.  When defense counsel argued a purse was "clearly a female's property" the court reasoned that men also carry "purses or bags . . . .  [T]hey carry things . . . that you can hold things in."  Although the court did not specifically find that the drugs were in plain view, it added that the agent who testified the drugs were "right there on top" of the purse was "thoroughly believable" and therefore the agents did not "need to search" the purse to find the drugs.

On August 12, 2019, defendant pleaded no contest to the drug charge in exchange for a three-year term of probation, with various terms and conditions including that she serve a jail term of 120 days.  On September 24, 2019, she was sentenced in accordance with her plea agreement; she timely appealed.

## DISCUSSION

### I

### *Search of the Purse*

Defendant first argues the search of her purse exceeded the scope allowable by virtue of her husband's searchable parole status.  As we shall explain, we find no error.

The standard governing our review of a trial court's denial of a suppression motion is well established.  (*People v. Weaver* (2001) 26 Cal.4th 876, 924.)  " 'We defer to the trial court's factual findings, express or implied, where supported by substantial evidence.  In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment.' "  (*Ibid.*)

As explained by our high court in *People v. Schmitz* (2012) 55 Cal.4th 909 at page 916: "Challenges to the admissibility of evidence obtained by a police search and seizure are reviewed under federal constitutional standards.  [Citations.]  A warrantless search is unreasonable under the Fourth Amendment unless it is conducted pursuant to one of the few narrowly drawn exceptions to the constitutional requirement of a warrant.

3

[Citations.]  California's parole search clause is one of those exceptions."  Every parolee in California "is subject to search or seizure by a probation or parole officer or other peace officer at any time of the day or night, with or without a search warrant or with or without cause."  (Pen. Code, § 3067, subd. (b)(3).)  Moreover, "[a] law enforcement officer who is aware that a suspect is on parole and subject to a search condition may act reasonably in conducting a parole search even in the absence of a particularized suspicion of criminal activity . . . ."  (*People v. Sanders* (2003) 31 Cal.4th 318, 333.)

Such a search may extend to areas over which the parolee shares common authority with nonparolees, based on the rationale that persons with joint access to and general control over an area assume the risk that any one of them may consent to its being searched by the police.  (*People v. Woods* (1999) 21 Cal.4th 668, 675-676; *People v. Smith* (2002) 95 Cal.App.4th 912, 916; *United States v. Matlock* (1974) 415 U.S. 164, 170-171 & fn. 7.)  However, authorities carrying out a probation or parole search "generally may only search those portions of the residence they reasonably believe the probationer [or parolee] has complete or joint control over."  (*Woods,* at p. 682; see *People v. Sanders, supra*, 31 Cal.4th at p. 330 ["the expectation of privacy of cohabitants is the same whether the search condition is a condition of probation or parole"].)  In a home shared by a parolee and other people, for example, the common areas may all be searched, as well as the parolee's bedroom, and not those rooms used exclusively by the parolee's cohabitants.  (See *Smith,* at pp. 916-917; *People v. Emri* (2013) 216 Cal.App.4th 277, 280 (*Emri*); *People v. Robles* (2000) 23 Cal.4th 789, 798.)  This is because "persons under the same roof may legitimately harbor differing expectations of privacy[,] . . . consistent with the principle that one's ability to claim the protection of the Fourth Amendment depends on the reasonableness of his or her individual expectations. [Citations.]"  (*Robles,* at p. 798.)  Even in areas of common control, officers may not search individual items such as purses without a reasonable suspicion that the parolee or probationer has, at a minimum, common control over that particular item.  (See, e.g.,

4

*People v. Veronica* (1980) 107 Cal.App.3d 906, 909 [because there was no evidence that the parolee's wife's purse was jointly controlled, the search of that item pursuant to the parole condition exceeded the scope allowable under law].)

Defendant argues that here there was no substantial evidence of common control over the purse itself. We disagree. In *Smith, supra*, 95 Cal.App.4th 912, the appellate court held that the police reasonably concluded that a male probationer and his female roommate, who shared a bedroom with him, jointly controlled all of the items in the shared bedroom. The various narcotics and associated paraphernalia stashed throughout the bedroom allowed the inference that the entire bedroom was being used for a common criminal enterprise, and with emphasis on the fact that the key to the safe located in that bedroom was in the female roommate's purse, the court held that a purse found in that bedroom was also jointly controlled by the male probationer, and thus properly within the scope of the search. (*Id*. at pp. 914-915, 918-919.) Similarly, in *People v. Boyd* (1990) 224 Cal.App.3d 736, the court held that what it termed the "reasonable suspicion standard" justified a parole search of a gender-neutral handbag located in a travel trailer jointly occupied by a parolee and his female companion. (*Id.* at pp. 750-751.)

Likewise, in *Emri, supra*, 216 Cal.App.4th 277, the appellate court upheld the search of a tan purse located on a chair in the middle of a cluttered bedroom the defendant shared with her husband who was on searchable probation. (*Id*. at pp. 279-282.) Because the defendant shared the bedroom with her husband, that husband had joint control or access over the items contained therein. (*Id*. at pp. 281-282 [worrying that disallowing the search of "cohabitant's purse" would permit the "flout[ing]" of the search condition]; but see *People v. Veronica, supra,* 107 Cal.App.3d at p. 909 [husband's parole search condition did not justify warrantless search of wife's distinctively female handbag without circumstances indicating husband had access to or control over that bag].)

Here, the trial court denied defendant's motion to suppress, noting the purse was in a shared bedroom, purses are also used by men, and the drugs were found upon moving the purse without a search of the inside. We agree that the evidence supports these findings, and that under these specific circumstances, the agent's action of picking up the purse and discovering the drugs did not violate the Fourth Amendment.

It is undisputed here that defendant's husband was on searchable parole and shared the bedroom with defendant, and that the purse holding the drugs was found next to their shared bed. The trial court found that the drugs were in sight in the open purse upon Agent Grace's lifting of that bag, and defendant does not discuss, let alone challenge, that finding in her briefing.

Although defendant suggests in her briefing that the purse was only in the bedroom because agents told defendant to put it there, the record is clear that the purse was in the shared bedroom prior to the search. As we have explained, circumstances supported the agents' reasonable inference that the parolee had joint custody and control over defendant's purse under these specific facts. (*Emri, supra*, 216 Cal.App.4th at pp. 281-282; *Boyd*, at p. 750; *Smith, supra*, 95 Cal.App.4th at pp. 918-919.)

Finally, even were we to assume for the sake of argument that the searching agents did not have a reasonable suspicion that the purse was under the parolee's joint control, the particular limitations of the search at issue here render it legal. As we have noted, defendant does not dispute the trial court's alternate finding that the drugs were within the agent's view from the time he first lifted the purse. At that time, the agents had not finished their search of the bedroom. Defendant does not dispute the legality of the *bedroom's* search, only the inclusion of the interior of the purse.[1] She does not and

---

[1] Defendant makes a one sentence argument in the conclusion of the section of her briefing headed: "The Officers Exceeded the Scope . . . When They Searched Appellant's Purse Without a Warrant." The sentence reads: "On this scant record, it

6

cannot establish that it would have been an illegal for the agents, who were properly in the jointly controlled bedroom, to merely lift and relocate the purse during their search. The record reflects that this movement would have disclosed the presence of the drugs at the top of the purse when the purse was lifted, prior to any search of the interior. Accordingly, we affirm the trial court's denial of defendant's motion to suppress.

Because we uphold the search on multiple other grounds, we need not and do not reach defendant's remaining arguments concerning her consent.

## II

### *Correction of Minute Order/Probation Order*

Our review of the record has disclosed that the minute order following sentencing, which appears to also function as the preliminary (unsigned) order of probation, incorrectly lists the restitution fine (Pen. Code, § 1202.4, subd. (b)) and probation revocation restitution fine (*id*., § 1202.44) imposed as $600 each, rather than the $300 each actually imposed by the court. We will direct the trial court to correct this clerical error.

Further, the minute order lists the payment of the court operations and criminal conviction fees as conditions of probation. These fees must be separately imposed; neither is properly included as a condition of probation. (*People v. Kim* (2011) 193 Cal.App.4th 836, 842-843.)

---

cannot be said that the People met their burden of proof of showing that the warrantless search of appellant's bedroom was justified by Denudt's status as a parolee." This sentence contains defendant's only reference to the legality of the broader search of the bedroom, and does not preserve any challenge she may seek to make to the broader search on this appeal.

## DISPOSITION

The judgment is affirmed.  The trial court is directed to correct the minute order/probation order to correctly list the restitution and probation revocation restitution fines at $300 each and to specify that the conditions of probation do not include the payment of court operations and criminal conviction fees.

/s/
Duarte, J.

We concur:

/s/
Robie, Acting P. J.

/s/
Murray, J.

8